**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RICHARDSON FOODS, INC., *et al.*,<br><br>                       Debtor. | <u>NOT FOR PUBLICATION</u><br><br>Chapter 7<br><br>Case No. 20-11203 (JPM)<br>(Jointly Administered) |
| In re:<br><br>RICHARDSON BRANDS COMPANY,<br><br>                       Debtor. | Case No. 21-10439 (JPM) |
| DEBORAH J. PIAZZA, AS CHAPTER 7 TRUSTEE OF RICHARDSON FOODS, INC. AND RICHARDSON BRANDS COMPANY,<br><br>                       Plaintiff,<br><br>             -against-<br><br>KOBI AFEK, FOUNDERS EQUITY I, LP, JOHN TEEGER, WARREN HABER, PRAIRIE STREET CAPITAL, INC., DOGE CAPITAL, LLC, RANDALL TALCOTT, ROSES CONFECTIONS, L.P., ROSES HOLDINGS LIMITED, ROSES RE HOLDINGS, LLC, WEBSTER BUSINESS CREDIT CORPORATION,<br><br>                       Defendants. | Adv. Pro. No. 22-01103 (JPM) |

**MEMORANDUM OPINION AND ORDER GRANTING**
**TRUSTEE'S MOTION TO APPROVE SETTLEMENT**

*A P P E A R A N C E S:*

TARTER KRINSKY & DROGIN LLP
*Counsel for Plaintiff Deborah J. Piazza, as Chapter 7*
*Trustee of Richardson Foods, Inc. and Richardson Brands*
*Company*
1350 Broadway, 11th Floor
New York, NY 10018
212-216-8000
By: Alex Spizz, Esq.

By: Scott S. Markowitz

ANDERSON KILL P.C.
*Counsel for Defendant Kobi Afeki*
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
212-278-1000
By: Sheldon Eisenberger, Esq.
By: Difie Osborne, Esq.

REITLER KAILAS & ROSENBLATT LLP
*Counsel for Defendants Founders Equity I, LP, John Teeger and Warren Haber*
885 Third Avenue, 20th Floor
New York, NY 10022
212-209-3099
By: Leo Kailas, Esq.
By: Jack McKay

DUNNINGTON, BARTHOLOW & MILLER, LLP
*Counsel for Defendants Prairie Street Capital, Inc.*
230 Park Avenue, 21st Floor
New York, NY 10169
212-682-8811
By: Luke McGrath

WHITE AND WILLIAMS LLP
*Counsel for Defendants Doge Capital LLC and Randall Talcott*
7 Times Square, Suite 2900
New York, NY 10036
212-868-4837
By: Christopher F. Graham, Esq.

POLSINELLI PC
*Counsel for Defendants Roses Confections, L.P., Roses Holdings Limited and Roses RE Holdings, LLC*
By: Adam Greene, Esq.

THOMPSON COBURN HAHN & HESSEN LLP
*Counsel for Defendant Webster Business Credit Corporation*
488 Madison Avenue, 15th Floor
New York, NY 10022
212-478-7244
By: Stephen Grable, Esq.
By: Joshua Ian Divack, Esq.

2

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Chapter 7 Trustee's Motion Pursuant to Fed. R. Bankr. P. 9019(a) for Approval of Stipulation of Partial Settlement of Adversary Proceeding*, Docket No. 28 (the "**9019 Motion**"). The 9019 Motion seeks the Court's approval of that certain *Stipulation of Settlement between (i) Deborah J. Piazza, as Chapter 7 Trustee of the Debtors, (ii) Kobi Afek, (iii) Founders Equity I, LP, (iv) John Teeger, (v) Warren Haber, (vi) Roses Confections, L.P., (vii) Roses Holdings Limited, (viii) Roses RE Holdings, LLC, and (ix) Webster Business Credit Corporation*, dated as of November 29, 2022, annexed to the 9019 Motion as Exhibit A (the "**Settlement Agreement**," and the parties thereto, the "**Settling Parties**"). Defendants Doge Capital, LLC ("**Doge**") and Randall Talcott ("**Talcott**") together filed an objection to the 9019 Motion. (*See Objection of Non-Settling Defendants to Partial Settlement Agreement and Reservation of Rights with Respect to Counterclaims and Cross-Claims*, Docket No. 32 (the "**Doge Objection**")). Defendant Prairie Street Capital, Inc. ("**Prairie**") also filed an objection (*see Objections of Non-Settling Defendants to Partial Settlement Agreement and Reservation of Rights with Respect to Counterclaims and Cross-Claims*, Docket No. 33 (the "**Prairie Objection**")), supported by the *Declaration of Michael Barry*, Docket No. 34 (the "**Barry Declaration**"). Plaintiff Deborah J. Piazza, as Chapter 7 Trustee (the "**Trustee**"), filed a reply to these objections. (*See Chapter 7 Trustee's Reply to Objections to Chapter 7 Trustee's Motion Pursuant to Fed. R. Bankr. P. 9019(a) for Approval of Stipulation of Partial Settlement of Adversary Proceeding*, Docket No. 35 (the "**Trustee Reply**").) Defendants Founders Equity I, LP ("**Founders**"), John Teeger ("**Teeger**") and Warren Haber ("**Haber**") filed a response in support of the 9019 Motion. 9*See Defendant Founders', Teeger's and Haber's Response to Non-*

3

*Settling Defendants' Objections*, Docket No. 38 (the "**Founders Response**").) Defendant Kobi Afek ("**Afek**") also filed a response in support of the 9019 Motion. (*See Defendant Kobi Afek's Reply to Objections by Defendants Doge Capital LLC, Randall Talcott, and Prairie Street Capital, Inc., to the Debtors' November 30, 2022 Motion to Approve the Settlement*, Docket No. 39 (the "**Afek Response**").) The Court held a hearing on the 9019 Motion on December 21, 2022 (the "**Hearing**"). The Court has considered: (i) the 9019 Motion; (ii) the Doge Objection; (iii) the Prairie Objection; (iv) the Barry Declaration; (v) the Trustee Reply; (vi) the Founders Response; (vii) the Afek Response; (viii) the arguments from the Hearing; and (ix) all other relevant material in the record. As set forth below, the Court finds that the Trustee has established that the Settlement Agreement is fair, equitable and in the best interest of the estates, and is well within the range of reasonableness. Accordingly, the Court will grant the 9019 Motion.

## I. BACKGROUND

To briefly summarize the relevant facts, certain creditors filed an involuntary chapter 7 bankruptcy petition against debtor Richardson Foods, Inc. ("**RFI**") on May 15, 2020, with the order for relief granted on July 1, 2020. (9019 Motion ¶ 3.) The Trustee investigated RFI and concluded that it was a holding company whose sole asset was its 100% equity interest in Richardson Brands Company ("**RBC**"). (9019 Motion ¶ 3.) The Trustee put RBC into voluntary chapter 7 bankruptcy on March 8, 2021. (9019 Motion ¶ 8.) The RBC case was ordered jointly administered with the RFI case, without substantive consolidation. (9019 Motion ¶ 8; *In re Richardson Foods, Inc.*, No. 10-11203, *Order Authorizing Joint Administration of the Debtors' Chapter 7 Cases*, Docket No. 49.)

RBC had been an operating entity that manufactured candy products for over 120 years and, more recently, also produced a popular seasoning product called "Gravy Master." (9019 Motion ¶ 2.) RBC was struggling by the late 2010s, and on March 9, 2020, it surrendered its

4

assets to Webster Business Credit Corporation ("**Webster**"), to whom RBC was indebted under a secured credit facility. (9019 Motion ¶¶ 9-13.) Webster subsequently conducted a private sale under Article 9 of the UCC and sold RBC's assets to Roses Confections, L.P., Roses Holdings Limited, Roses RE Holdings, LLC (together, "**Roses**") for $3.4 million and a portion of certain accounts receivable collected by Roses. (9019 Motion ¶¶ 9-15.) $2.5 million of the sale proceeds were used to partially pay off RBC's credit facility with Webster—the rest of the facility was paid off from cash collateral previously provided by Founders, Prairie, Teeger and Haber. (9019 Motion ¶¶ 13-15.) Proceeds of the sale were also distributed to Founders ($442,732), Prairie ($228,717), Teeger ($110,274) and Haber ($110,274) in pro rata partial repayment of their cash collateral. (9019 Motion ¶¶ 13-15.) Amounts from the accounts receivable were to be paid to Doge and Talcott, who have received $696,517 and $77,390 to date, respectively. (9019 Motion ¶ 12, 15; *see* Doge Objection Ex. D.) In total, Doge, Talcott and Prairie collectively received slightly over $1 million from the sale proceeds—more than any other creditor besides Webster.

The Trustee commenced this adversary proceeding to pursue claims arising from the sale of RBC's assets and distribution of proceeds. (9019 Motion ¶ 17; *see also Complaint*, Docket No. 1 (the "**Complaint**").) The Trustee asserted (i) breach of fiduciary duty claims against Afek, Teeger and Webster; (ii) preference claims against Founders, Teeger and Haber; (iii) fraudulent conveyance claims against Founders, Prairie, Teeger, Haber, Doge, Talcott and Roses; and (iv) successor liability claims against Roses. (Complaint ¶¶ 66-288.)

The parties agreed to try to mediate their dispute before the Honorable Jil Mazer-Marino. (9019 Motion ¶ 26.) After several days of mediation, the Trustee, Afek, Founders, Teeger, Haber, Roses, and Webster agreed to a settlement, the terms of which are memorialized in the Settlement Agreement. (*See* 9019 Motion ¶¶ 26-27.)

5

The key terms of the Settlement Agreement are as follows:

(i) Afek, Teeger and Founders shall pay the Trustee $250,000.

(ii) Roses shall pay the Trustee $125,000.

(iii) Webster shall pay the Trustee $25,000.

(iv) All claims among the Settling Parties shall be mutually released.[1]

(v) The Settling Parties shall waive the claims against the bankruptcy estates, including Afek's $100,000 claim.

(vi) Roses shall pay up to $10,000 of Trustee's counsel's expenses to investigate certain of the debtors' claims against Nassau Candy Distributors Inc., which claims will belong to Roses.

(*See* 9019 Motion ¶¶ 34-38.)

Doge, Talcott and Prairie (together, the "**Non-Settling Defendants**") did not reach a settlement. In the Doge Objection and the Prairie Objection, the Non-Settling Defendants argue that there are certain defects with the Settlement Agreement such that the Court must not approve it. In the Founders Response and the Afek Response, Founders, Teeger, Haber and Afek offer their support for the Settlement Agreement and contest certain of the Non-Settling Defendants' assertions.

## II. LEGAL STANDARD

Bankruptcy Rule 9019 provides that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement." The decision to approve a settlement rests within the Court's sound discretion. *In re Remsen Partners, Ltd.*, 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003). The Court must determine that a settlement is fair, equitable and in the best interests of the estate before it may approve the settlement. *In re Adelphia Commc'ns*

---

[1] This release is only among the Settling Parties. The Settlement Agreement does not purport to release claims held by Doge, Talcott or Prairie, and includes a parenthetical expressly stating that that these defendants are excluded from the release. (*See* Settlement Agreement ¶ 7.)

6

*Corp.*, 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007). Courts in the Second Circuit balance the following seven interrelated factors to evaluate whether a settlement is fair and equitable:

(i) the balance between the litigation's possibility of success and the settlement's future benefits;

(ii) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(iii) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(iv) whether other parties in interest support the settlement;

(v) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(vi) "the nature and breadth of releases to be obtained by officers and directors"; and

(vii) "the extent to which the settlement is the product of arms' length bargaining."

*In re Iridium*, 478 F.3d 452, 462 (2nd Cir. 2007); *see, e.g.*, *In re MatlinPatterson Glob. Opportunities Partners II L.P.*, 644 B.R. 418, 428-34 (Bankr. S.D.N.Y. 2022) (applying *Iridium* factors and granting motion to approve settlement). "Not all factors must point in the same direction, and not all factors must be given the same weight." *In re Motors Liquidation Co.*, 555 B.R. 355, 367 (Bankr. S.D.N.Y. 2016). In addition to these factors, the Court must be sensitive to whether the proposed settlement would "unduly prejudice" a non-settling creditor or other party. *MatlinPatterson Glob. Opportunities Partners II L.P.*, 644 B.R. at 426.

When reviewing a settlement, the Court is to "canvas the issues" being settled to determine whether the settlement falls "below the lowest point in the range of reasonableness," but it is not required to conduct a "mini-trial" on the issues. *Remsen Partners, Ltd.*, 294 B.R. at

7

565 (citations omitted). That said, the Court may not simply rubberstamp the recommendation of the trustee, but must make an "independent, full and fair assessment of the wisdom of the proposed compromise." *Id.*

### III. DISCUSSION

The Court will analyze the *Iridium* factors as applied to the present case.

The first *Iridium* factor considers the balance between the litigation's possibility of success and settlement's future benefits. The Trustee asserts that the $400,000 settlement amount is fair in light of the defenses asserted and the legal and factual issues that would need to be litigated in this adversary proceeding. (9019 Motion ¶ 50.) The Trustee also notes that the Trustee does not have the resources to pay for discovery and experts to prosecute this adversary proceeding to trial. (9019 Motion ¶ 50.) The Non-Settling Defendants assert that the Trustee's claims have a high probability of success and that the Trustee is settling for too little (Prairie Objection 8-10.) The Court finds that the success of litigation is uncertain in light of the various defenses available (*see* 9019 Motion ¶¶ 28-31), as well as the legal and factual issues that would need to be litigated (for example, determining the fair value of the RBC assets sold during the uncertainty of the early COVID-19 pandemic). *See, e.g.*, *In re K.G. IM, LLC*, 620 B.R. 469, 484-85 (Bankr. S.D.N.Y. 2020) (holding first factor weighed in favor of settlement where debtor's likelihood of success in litigation was "far from certain" because of factual and legal issues). The Settlement Agreement will provide a reasonable recovery for RBC's creditors. Further, it will allow the Trustee to continue litigating the claims asserted against the Non-Settling Defendants, which could potentially enhance recovery such that RFI creditors receive a distribution. (9019 Motion ¶¶ 39, 52; Trustee Reply ¶ 32.) The Court thus finds that the $400,000 payable under the Settlement Agreement is a reasonable recovery, and, considering litigation risks and other related issues, this factor weighs in favor of approving the Settlement Agreement.

The second factor to consider is the likelihood of complex and protracted litigation, which includes expense, inconvenience and delay and difficulty in collecting on the judgment. The Trustee asserts that without the Settlement Agreement, costly and protracted litigation is certain. (9019 Motion ¶ 51.) The Non-Settling Defendants argue that there is "no dispute" regarding the "bad acts" of certain defendants or regarding Webster's alleged breach of certain contractual obligations to Prairie, so complex litigation is unlikely. (Prairie Objection 11-12.) As previously described, there are numerous legal and factual issues that would need to be litigated in this adversary proceeding (including through expert testimony). Prairie's assertion that there is "no dispute" regarding the "bad acts" of insiders is not supported by the record. Indeed, during the Hearing, the parties argued over an array of factual issues that would need to be litigated in this matter. The Court finds that, absent the Settlement Agreement, complex, expensive and protracted litigation is likely, and thus this factor weighs in favor of approving the Settlement Agreement. *See, e.g.*, *In re Ben-Artzi*, No. 21-10470 (MG), 2021 WL 5871718, at *8 (Bankr. S.D.N.Y. Dec. 10, 2021) (holding that second factor weighed in favor of settlement where litigation would be costly and cause delay and the trustee had no funds to continue litigation).

The third factor to consider is the paramount interests of the creditors. The Trustee asserts that the Settlement Agreement serves the paramount interests of creditors because it provides money that the estate can distribute to creditors and will provide funding for the Trustee to continue pursuing claims against the Non-Settling Defendants. (9019 Motion ¶ 52.) The Non-Settling Defendants argue that the Settlement Agreement does not serve the paramount interests of the creditors because it benefits certain creditors over others, namely RBC creditors over RFI creditors (the Non-Settling Defendants themselves being RFI creditors). (Prairie Objection 11-15.) However, the Court finds that the Settlement Agreement will provide some recovery to RBC

9

creditors and allow the Trustee to continue to pursue claims against the Non-Settling Defendants, which may lead to recovery at the RFI level. *See, e.g.*, *In re 305 East 61st St. Group LLC*, No. 19-11911 (SHL), 2022 WL 16749111, at *3 (Bankr. S.D.N.Y. Nov. 7, 2022) (finding that third factor weighed in favor of settlement where unsecured creditors would benefit and protracted litigation would dissipate estate). Thus, the Court finds that this factor weighs in favor of approving the Settlement Agreement.

The fourth factor to consider is the support of parties in interest. The only opposition to the Settlement Agreement has come from the Non-Settling Defendants. (Trustee Reply ¶ 8.) No parties-in-interest unrelated to this adversary proceeding have endorsed or opposed the Settlement Agreement. The Court finds that overall this factor weighs in favor of the Settlement Agreement.

The fifth factor to consider is the competency and experience of the counsel supporting the settlement. Both sides are represented by competent and experienced counsel. (9019 Motion ¶ 54.) The Court finds that this factor weighs in favor of approving the Settlement Agreement.

The sixth factor considers the nature and breadth of director and officer releases. The Settlement Agreement provides mutual releases among the Settling Parties. (9019 Motion ¶ 38.) The Non-Settling Defendants argue that these releases are overly broad and will unfairly bar them from pursuing claims they have against Afek and Roses. (Prairie Objection 19-20.) The Trustee responds that the Settlement Agreement does not in fact affect the rights of the Non-Settling Defendants, and they will be free to pursue their claims. (Trustee Reply ¶ 10.) The Court agrees with the Trustee that the Settlement Agreement would not affect the Non-Settling

10

Defendants' rights to pursue their own claims.[2] The Court therefore finds that this factor weighs in favor of approving the Settlement Agreement.

The seventh factor examines the extent to which the settlement is the product of arms' length bargaining. The Trustee argues that the Settlement Agreement is the product of arms' length bargaining. (9019 Motion ¶ 55.) The Non-Settling Defendants argue that the provision that requires Trustee's counsel to investigate a legal claim for the benefit of Roses creates an impermissible conflict that taints the entire settlement. (Prairie Objection 20; Doge Objection ¶ 29.) The Trustee responds that there is no conflict because Trustee's counsel will only be conducting discovery at Roses' expense to determine the validity of a pre-petition claim. (Trustee Reply ¶ 41.) The Court finds that the settlement was negotiated at arms' length, and the Court does not believe that the Trustee's arrangement with Roses presents any conflict that taints the Settlement Agreement. The Court thus finds that this factor weighs in favor of approving the Settlement Agreement.

In addition, Prairie argues that the Settlement Agreement unduly prejudices its ability to pursue claims against the Settling Parties. (Prairie's Objection 7-8.) As discussed above, this is not the case.[3]

The Non-Settling Defendants raise certain other alleged factual disputes, but, as set forth above, the Court is not required to conduct a "mini-trial" on all issues. None of the issues raised would impact the overall reasonableness of the settlement.

### IV.    CONCLUSION

---

[2] *See* fn. 1, *supra*.

[3] Doge and Talcott also object to the Settlement Agreement on the grounds that the Trustee is failing to represent the interests of RFI creditors and is ignoring various assets allegedly owned by RFI. (*See generally* Doge Objection.) The Trustee states that RFI does not have any undiscovered assets and points out that RFI can only receive distributions once RBC creditors are paid in full. (Trustee Reply ¶¶ 14-37.) Since RFI creditors are not able to receive distributions from proceeds of RBC's assets until RBC's creditors are paid off in full, the Non-Settling Defendants' complaints here are without merit.

11

Based on the forgoing analysis, the Court finds that the Settlement Agreement is a fair and equitable compromise that falls well within the range of reasonableness and is in the best interests of the bankruptcy estates. Accordingly, the Court approves the Settlement Agreement. The 9019 Motion is **GRANTED**. The parties shall submit a proposed order consistent with the rulings set forth herein.

**IT IS SO ORDERED.**

Dated:   January 05, 2023
         New York, New York

                                    /S/ John P. Mastando III
                              HONORABLE JOHN P. MASTANDO III
                                UNITED STATES BANKRUPTCY JUDGE